# EXHIBIT C



# TEXAS HEALTH AND HUMAN SERVICES COMMISSION

ALBERT HAWKINS
EXECUTIVE COMMISSIONER

May 1, 2008

Mr. James Frizzera, Director
Financial Management Group S3-13-23
Center for Medicaid and State Operations
7500 Security Boulevard
Baltimore, Maryland 21244-1850

Re: Deferrals ##TX/2007/3/E/11/MAP; TX/2007/3/E/12/MAP; TX/2007/4/E/15/MAP

Dear Mr. Frizzera:

The purpose of this letter is to set forth the steps that the Texas Health and Human Services Commission (the Commission or HHSC) proposes be taken to resolve the outstanding issues that have arisen in the private hospital UPL program as reflected in the deferral letters that CMS has issued:

- Letter of October 5, 2007, deferring $37,583,374 in FFP (deferral #1);
- Letter of October 5, 2007, deferring $72,633,689 in FFP (deferral #2); and
- Letter of January 28, 2008, deferring $50,052,809 in FFP (deferral #3).

After careful consideration and review, the Commission has determined that it should not pursue certain of the claims covered by deferral #1, but that the claims covered by deferrals ## 2 and 3 are consistent with federal law and the state plan. At the same time the Commission has developed a set of criteria to guide hospitals participating in the private hospital UPL program in the future. A copy of the criteria is attached.

The expenditures reported in the CMS-64 form for the quarter ending June 30, 2007, that are the subject of deferral #1 totaled $157,662,161.21. Of this amount, $61,835,099.63 was derived from intergovernmental transfers (IGTs) that CMS has questioned based on a concern that the transferred funds were recouped by the transferring local government entities from the private hospitals receiving the UPL payments. In light of that concern, we will reduce our claimed expenditures by the amount of the IGTs so questioned. This will reduce the State's FFP claim by the amount of the deferral ($37,583,374).

We have made this adjustment on the appropriate CMS form for the quarter ending March 31, 2008, which we submitted on April 30, 2008. In order to clarify this disposition for accounting

and reconciliation purposes, we request that CMS take the necessary steps to withdraw deferral #1.

In our letters to CMS dated February 4, 2008, relating to deferral #2, and March 31, 2008, relating to deferral #3, we have set forth the basis for our determination, after investigation and review, that the claims covered by those deferrals were proper and qualified for FFP. We ask that CMS also take the necessary steps to withdraw these deferrals, so that the State may immediately receive the FFP withheld by deferral letters ##2 and 3.

The Commission does not intend to recover from the private hospitals any of the payments made to them that are the subject of deferral #1. However, it does intend to retain, from future IGTs from local government entities that are in excess of the amounts needed to fund the non-federal share of UPL payments, amounts equal to the amount covered by deferral #1. In this manner, the excess IGTs will replace the federal funds, covered by deferral #1, that the State did not receive.

Use of the payments made by HHSC to the private hospitals in the UPL program during the period in which HHSC retains excess portions of the IGTs (as well as thereafter) will be governed by the criteria referred to previously and attached to this letter, as well as by applicable federal and state laws and regulations.

We would appreciate your confirmation that the resolution of the issues outlined in this letter are satisfactory to CMS, and that it will release the funds covered by deferrals ##2 and 3 in accordance with the foregoing.

Sincerely,

Chris Traylor
Associate Commissioner for Medicaid and CHIP

Attachment

cc:   Albert Hawkins, Executive Commissioner
      Charles Bell, Deputy Executive Commissioner for Health Services
      Tom Suehs, Deputy Executive Commissioner for Financial Services

# Attachment

Prospective Conditions of Participation
in the
Texas Private Hospital Upper Payment Limit
Supplemental Reimbursement Program

HHSC000146

# Prospective Conditions of Participation in the Texas Private Hospital Upper Payment Limit Supplemental Reimbursement Program

In consideration of the resolution of the pending deferrals of the State of Texas' requests for federal financial participation pursuant to the Texas Private Hospital Upper Payment Limit (UPL) supplemental payment program, the Texas Health and Human Services Commission will establish additional conditions of participation by private hospitals and local governmental entities. The conditions will be effective upon resumption of the supplemental payments and will apply to all payments made after April 15, 2008.

## I. No linkage between Indigent Care obligations and UPL Payments

The indigent care obligation of a private hospital that is affiliated with a governmental entity for purposes of participation in the Private Hospital UPL supplemental payment program will not be conditioned or measured by the amount of supplemental payments a private hospital receives under the program. Likewise, the amount of supplemental payments a private hospital receives under the Private Hospital UPL supplemental payment program will not be conditioned or measured by the amount of indigent care the private hospital provides, subject to the documentation and evaluation conditions described in sections I.A and III below. A participant may consider the amount of supplemental payments it expects to receive in deciding whether, and to what degree, it will participate in the indigent care program. A government entity may consider the historical experience in the indigent care program in deciding whether to make an intergovernmental transfer of funds, or the amount of such a transfer.

A private hospital receiving UPL supplemental payments may not be assigned the indigent care contractual or statutory obligations of a transferring governmental entity. However, a private hospital that receives UPL supplemental payments may provide indigent care by entering into its own arrangements (contractual or otherwise) with health care providers that had previously provided indigent care services to the transferring governmental entity.

### A. Permissible documentation

In determining whether to make an intergovernmental transfer of funds to provide the state share of supplemental payments and/or the amount of such a transfer, a governmental entity may rely on documentation that demonstrates the amount and types of indigent care needs in the community and the amount and types of health care (including indigent health care and Medicaid services) historically provided in the community. The governmental entity may not condition the amount to which it funds the non-Federal share of supplemental payments on a specified or required minimum amount of prospective indigent care.

Any documentation utilized in connection with intergovernmental transfers of funds shall be publicly available for review.

### B. Certification

HHSC will require certifications from both funding governmental entities and private hospitals that affirm the following:

(1) That there is no agreement to condition the amount transferred by the government entities nor the amount of UPL payments on the amount of indigent care a private hospital has provided or will provide;

(2) That there is no agreement to condition the amount of the private hospital's indigent care obligation on the amount transferred by the government entities nor the amount of any UPL payment the hospital might receive;

(3) That no escrow, trust, or other funding mechanism exists, the amount of which is conditioned or contingent on the amount of indigent care services provided or to be provided by private hospitals receiving UPL supplemental payments; and that any escrow, trust or other funding mechanism utilized in connection with an anticipated intergovernmental transfer from a governmental entity has been disclosed to HHSC and is in no way intended to facilitate or constitute a quid pro quo for the provision of indigent care services by or on behalf of the private hospitals; and

(4) That the governmental entity has not received and will not receive refunds of payments the governmental entity made or makes to the private hospitals for any purpose in consideration for an IGT by the government entity to fund UPL supplemental payments.

A governmental entity may retrospectively evaluate the amount and impact of a hospital's indigent care delivery during the period it receives supplemental payments and can rely on such historical information in determining whether, and to what degree, it will provide an IGT and/or set aside government funds in an escrow account in the future.

## II. No cash or in-kind transfers

The Private Hospital UPL program must not include cash or in-kind transfers from affiliated private hospitals to the governmental entities that supply the IGT to fund the state share of UPL payments other than transfers and transactions that are unrelated to the administration of the Private UPL program and/or the delivery of indigent care services and represent:

(1) Fair market value for goods and/or services rendered to the private hospital; and

(2) Independent, bona fide transactions negotiated at arms-length and in the ordinary course of business between the hospital and the governmental entity.

## III. Performance evaluations allowable

### A. Authority of Governmental Entity to Evaluate Impact

A governmental entity that supplies the intergovernmental transfer to fund the state share of UPL payments must, consistent with its fiduciary duty under the Texas Constitution and state law, have the ability to determine whether its investment of taxpayer funds increases the level of indigent care provided in the community and improves access to care for the needy in its community.

## B. Audit Authority

To that end, a governmental entity may implement reasonable pre- and post performance evaluation measures to—

    (1) Determine whether to execute an affiliation agreement with a private hospital;

    (2) Determine whether to continue an affiliation agreement with a private hospital; and

    (3) Provide accountability to local taxpayers.

## C. Pre-performance Evaluation Criteria

A governmental entity may consult with community leaders, advocates for the poor, and other stakeholders in assessing the opportunities to improve access to health care for indigent persons residing in the community through participation in the UPL program. These efforts can be documented in a form acceptable to the governmental entity to confirm achievement of the governmental entity's mission and provide an appropriate and constitutional basis on which to supply local taxpayer funds to the State for the purpose of supplying the state share of costs.

This documentation, however, must not include:

    (1) A commitment that a private hospital perform or supply an amount of indigent care that is determined or measured on the basis of the amount of UPL funds it receives; or, a commitment that a government entity will transfer as the non-Federal share of UPL payments an amount that is determined or measured by the amount of indigent care a hospital performs or supplies.

    (2) An agreement to refund any type of payments made by the governmental entity to the private hospital; or

    (3) An assessment of a hospital's performance based solely on the amount of services the hospital provides to Medicaid recipients.[1]

## D. Post-performance Evaluation Criteria

---

[1] A governmental entity may take into account all forms of indigent care, charity care, or care to the needy an affiliated private hospital provides, including care to Medicaid recipients; provided, however, the amount of Medicaid services is not the sole criterion.

HHSC000149

A governmental entity may retrospectively evaluate the performance of a private hospital that is affiliated with the governmental entity to determine whether the hospital's participation benefited the community and whether its continued participation in the program is likely to continue benefiting the community. The governmental entity may collect, analyze, and report such data to the taxpayers on a post-hoc basis on an annual, semi-annual, or quarterly schedule. The governmental entity may not attempt to recoup funds from a private hospital that it determines has not adequately performed under the affiliation agreement.

HHSC000150