# EXHIBIT N

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland 21244-1850



**SMDL#14-004**

May 9, 2014

                                **RE: Accountability #2: Financing and Donations**

Dear State Medicaid Director:

This letter is the second in a series that provides guidance on mutual obligations and accountability on the part of state and Federal governments for the integrity of the Medicaid program and the development, application and improvement of program safeguards necessary to ensure proper and appropriate use of both Federal and state dollars.[1] It provides guidance to states concerning Federal statute and regulations related to the allowable and unallowable use of provider-related donations and also addresses the use of certain types of public-private arrangements; such as Low-Income and Needy Care Collaboration Agreements (LINCCAs), Collaborative Endeavor Agreements (CEAs), and Public-Private Partnerships. These arrangements generally involve Medicaid supplemental payments or special add-ons to the base payment rate that are contingent upon or otherwise related to agreements between government and private entities under which the private entities assume obligations to provide donated services or other transfers of value as directed in the arrangements.

CMS understands that partnerships and other relationships between governmental and private entities are often beneficial and can further the organizational goals of the businesses or entities involved. Such relationships may be contractual agreements to provide the state agency with goods and services for a fair market price arrived at through a state's procurement process (such as contracts for accounting services, landscaping services, management services, or supplies). Such relationships could also involve grant programs in which governmental agencies provide funding to private entities to pursue common public objectives, for example, fair market lease agreements. Nothing in this letter is intended to limit the ability of governments and businesses to establish these normal and important business relationships. This letter only discusses situations where governmental entities and private entities enter into agreements or relationships that constitute non-bona fide provider-related donations, in which private entities provide a governmental entity with funds or other consideration and receive in return additional Medicaid payments typically in the form of a supplemental payment.

Government entities are free to enter into agreements with private entities; however such agreements may affect the allowability of Medicaid funding if there is a hold harmless provision or practice. A hold harmless practice exists if there is a positive correlation between the agreement and the Medicaid payments, Medicaid payments are conditioned upon the receipt of a donation from a private entity, or if there is a guarantee that the private entity will see a return of some, or all, of that donation through a Medicaid payment. In cases where contracts and

---

[1] The first letter, SMDL #13-003, is available at http://www.medicaid.gov/Federal-Policy-Guidance/Downloads/SMD-13-003-02.pdf.

agreements do not directly or indirectly affect Medicaid base or supplemental payments, however, CMS generally would not consider these agreements as a barrier to approving a state plan amendment (SPA) or waiver.

As explained in more detail below, these arrangements raise issues relating to private donations and could potentially result in a hold harmless arrangement under which the donations are returned in full or in part to the provider or provider class. Donations that occur under such arrangements are not considered bona fide, and, as explained further below, the Centers for Medicare & Medicaid Services (CMS) will not approve SPAs that include non-bona fide donations as a portion, or all, of the non-Federal share of the Medicaid payments. Payment methodologies contingent upon the receipt of a non-bona fide donation would also be grounds for disapproval of a SPA.

**Background**

*Provider-Related Donations*

Federal regulations at 42 Code of Federal Regulations (CFR) 433.52, which implement section 1903(w) of the Social Security Act (the Act), define a provider related donation as "a donation or other voluntary payment (in cash or in kind) made directly or indirectly to a state or unit of local government by or on behalf of a health care provider, an entity related to such a health care provider, or an entity providing goods or services to the state for administration of the state's Medicaid plan."

Regulations at 42 CFR 433.54(a) define a bona fide donation as "a provider-related donation . . . that has no direct or indirect relationship . . . to Medicaid payments made to (1) the health care provider; (2) any related entity providing health care items and services; or (3) other providers furnishing the same class of items or services as the provider or entity." As set forth at 42 CFR 433.54(b) and (c), this does not include donations that are part of a hold harmless arrangement that directly or indirectly returns some or all of the donation to the provider, the provider class, or any related entity.

Section 1903(w)(1)(A) of the Act states that "notwithstanding the previous provisions of this section, for purposes of determining the amount to be paid to a state (as defined in paragraph (7)(D)) under subsection (a)(1) for quarters in any fiscal year, the total amount expended during such fiscal year as medical assistance under the state plan (as determined without regard to this subsection) shall be reduced by the sum of any revenues received by the state (or by a unit of local government in the state) during the fiscal year—(i) from provider-related donations (as defined in paragraph (2)(A)), other than - (I) bona fide provider-related donations (as defined in paragraph (2)(B)), and (II) donations described in paragraph (2)(C)." Because this provision indicates that Federal Medicaid payments must be reduced by the sum total of non-bona fide provider-related donations received by the state, state plans that rely on, or reference, non-bona fide provider-related donations would result in claims for Federal funding that would not be allowable. Also, supplemental payments supported by such donations would be unallowable because there is no valid source of the non-Federal share. Therefore, CMS will not approve such state plan amendments.

*Base and Supplemental Payments to Providers*

Section 1902(a)(30) of the Act requires that states "assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." In addition to other considerations, CMS requires states to submit upper payment limit (UPL) calculations to demonstrate that payments to Medicaid providers are economical and efficient and that both base and supplemental payments are within the UPL. Under 42 CFR 447.272 and 42 CFR 447.321, Medicaid payments for inpatient hospital, outpatient hospital, clinic, nursing facility, and ICF/IID services are limited to a reasonable estimate of the amount that Medicare would pay in the aggregate for each type of provider within three categories; state owned, non-state government owned, and privately owned. Payments that exceed this limit are considered out of compliance with the Federal statute and regulations described above.

Consistent with the regulatory UPL requirements, states may pay classes of providers up to the specified aggregate UPL levels for that class. Many states pay providers up to these levels by making a combination of base and supplemental payments to specific providers. Supplemental payments are typically targeted to specific kinds of providers. For example, a targeted hospital might be a state designated safety-net provider, a hospital with high Medicaid utilization, or provide care at a higher level of quality than other providers in the state.

In addition to the UPL requirements applied in the aggregate to classes of providers, CMS also reviews the reasonableness of fee-for-service payment rates to help ensure that payments are efficient and economical. Even if consistent with regulatory UPL requirements, CMS may question payment rates to particular providers that exceed usual and customary charges or other measures of reasonableness, absent clear justification that the higher rates benefit the Medicaid program. For example, CMS may question proposed payments to one or more providers that are orders of magnitude higher than payments to other providers of the same services.

**Public-Private Partnerships**

A public-private partnership arrangement is a relationship between a private entity and a government entity in which the private entity agrees, in some form, to provide a service or some other in-kind transfer of value to further the purposes of the government entity. In the context of the Medicaid program, some public-private arrangements also include provisions that the government entity will make an intergovernmental transfer (IGT) to the Medicaid agency, and the private providers that have signed, or otherwise entered into, an agreement would then become eligible for a Medicaid supplemental payment or special add-on to the base payment rate that may be funded by the IGT from the government entity under the same agreement. In some cases, the IGT is derived from funds that the government entity previously would have spent on providing the services that are now being provided by the private entity. These funds would not be available if not for the public-private partnership agreements. As described in further detail below, this type of arrangement would not be considered a bona fide donation under Medicaid requirements.

Many of the proposed partnerships that CMS examined focus on the delivery of non-Medicaid services to non-Medicaid eligible individuals. One such proposed arrangement involved a government agency, a non-profit organization, and a private hospital. Under the arrangement, a government entity (other than the Medicaid agency) contracted with a non-profit organization to provide employment training and transportation to places of employment for individuals with disabilities. Under the terms of the proposed public-private partnership arrangement between the private hospital and a local government entity, the local government entity would terminate its existing contract with the non-profit organization. The private hospital would then execute the same contract with the same non-profit organization. The local government entity would send an IGT to the Medicaid agency, in an amount approximately equal to the amount that it would have spent on the now terminated contract, which would trigger a supplemental payment under the proposed SPA. The supplemental payment would be directed to the private hospital that participates in public-private partnership arrangement. Under these circumstances, there is a hold harmless arrangement in which the contract to provide services is a provider-related donation and the receipt of supplemental payments is the return of some, or all, of the donation. As discussed below, this arrangement results in a non-bona fide donation and will not be approved by CMS unless claims for Federal Medicaid funding are reduced by the amount or value of the donation.

In another example, a private hospital would enter into an arrangement with a government entity to lease space at an amount above fair market value as determined by an independent third party assessment. The lease payments from the private hospital would be used to fund the non-Federal share of Medicaid supplemental payments to a private hospital serving as the lessee of the government-owned space. This illustration implies that there is a transfer of value that, while it has the form of a normal business transaction, is conditioned on the return of excess payments through higher Medicaid payments. As discussed below, this arrangement results in a non-bona fide donation and cannot be approved by CMS unless claims for Federal Medicaid funding are reduced by the amount of the excess lease payments.

Per section 1903(w) of the Act, provider donations that are part of hold harmless arrangements are not bona fide donations. Regardless of the expressed *intent* of providers and governmental entities, when there is an effective return of some, or all, of the donation to the private provider through Medicaid supplemental payments, a hold harmless arrangement exists. Any arrangement such as those described in this guidance that obligate a private hospital to either assume the programmatic responsibility of a unit of government or sign lease agreements at an amount that is greater than fair market value would be considered a hold harmless arrangement. The donation would not be considered bona fide when such arrangements are tied *in any way*, directly or indirectly, to Medicaid reimbursement under the Medicaid state plan.

Additionally, supplemental payments or other forms of increased payments based on the arrangements described above raise concerns with the Medicaid program's requirement for payments to be consistent with economy, efficiency, and quality of care to the extent that the overall payment exceeds the amount payable to other providers of the same services. There are also concerns when higher Medicaid payments to providers do not appear related to the purchase of more expensive or higher quality services for beneficiaries, but instead appear simply to alleviate burdens on public entities from funding a non-Medicaid activity. As such, these

payments are not consistent with section 1902(a)(30)(A) of the Act because they are not economical and efficient. We distinguish these payments from those that simply recognize the higher cost structures of providers that consistently provide significant levels of uncompensated care. CMS reviews these situations on a case-by-case basis.

**Conclusion**

Contracts and arrangements with private entities can be a valid way for a state to provide Medicaid services. However, if a provider enters into a public-private partnership to provide non-Medicaid services, as described in this letter, and the provider receives as a direct result, additional Medicaid base or supplemental payment than might otherwise be received under the current approved state plan, CMS will consider this exchange in value of either cash or in-kind services by the private entity to the public entity to be a non-bona fide donation. Therefore, CMS will not approve any SPAs or waivers that include such an arrangement. If a SPA is, or has been, approved and an inappropriate funding arrangement is discovered post-approval, CMS may pursue corrective action to ensure that the state changes its practices, and may recover Federal Financial Participation (FFP) associated with these supplemental payments. CMS will not interfere with state business or the state's ability to engage in business transactions with private entities, except when such arrangements and business transactions include the promise of increased Medicaid payments contingent upon the signing of such agreements. CMS is obligated to review financial arrangements and Medicaid payments for consistency with Section 1903(w) and Section 1902(a) of the Act.

We hope this guidance will help clarify for states what is authorized under the law. Our goal is to ensure that states have the information and support they need from CMS to promote flexibility while ensuring compliance with Federal statute and regulations. We expect that further consultations with states will lead to additional discussion regarding the appropriate application of these policies.

                                              Sincerely,

                                              /s/

                                              Cindy Mann
                                              Director

CC:

CMS Regional Administrators
CMS Associate Regional Administrators
Division of Medicaid and Children's Health Operations

Matt Salo
President
National Association of Medicaid Directors

Page 6 – State Medicaid Director

Alan R. Weil, J.D., M.P.P.
Executive Director
National Academy for State Health Policy

Ronald Smith
Director of Legislative Affairs
American Public Human Services Association

Joy Wilson
Director
Health Committee
National Conference of State Legislatures

William Garner
Legislative Director
Committee on Health and Human Services
National Governors Association

Debra Miller
Director for Health Policy
Council of State Governments

Christopher Gould
Director
Government Relations
Association of State and Territorial Health Officials