# EXHIBIT Q

Bobby Jindal
GOVERNOR



Anthony Keck
SECRETARY

# State of Louisiana

Department of Health and Hospitals
Bureau of Health Services Financing

August 20, 2010

Mr. Bill Brooks
Associate Regional Administrator
Centers for Medicare & Medicaid Services
1301 Young Street, Room 833
Dallas, Texas 75202

      Re:    Amendments to Louisiana State Plan for Medical Assistance LA 09-55, and LA 09-56

Dear Mr. Brooks:

The Louisiana Department of Health and Hospitals ("DHH") submitted two amendments to the Louisiana State Plan for Medical Assistance ("State Plan") on December 30, 2009 under Transmittal Nos. 09-55 and 09-56. Each of these State Plan Amendments ("SPA") authorizes Medicaid supplemental payments to hospitals that have entered into a Low Income and Needy Care Collaboration Agreement with a state or local governmental entity, including inpatient Medicaid supplemental payments (LA 09-55), and outpatient Medicaid supplemental payments (LA 09-56).

The Centers for Medicare and Medicaid Services ("CMS") sent two Requests for Additional Information ("RAI"), dated March 18, 2010 and March 22, 2010, in which CMS raised questions regarding LA 09-55 and LA 09-56.

The State of Louisiana has available public funds that are dedicated to healthcare needs, including State general revenue and public funds available at subdivisions of the state (e.g. local governmental entities such as Hospital Services Districts). Only a small portion of these public funds are currently being utilized to fund the Medicaid program through Medicaid DSH and other current supplemental payments. Due to reductions in Medicaid spending and a growing Medicaid and indigent uninsured population ("low income and needy"), there is a growing gap between the costs hospitals incur for treating low income and needy patients and the reimbursement they receive. In light of the growing gap between the cost of care and reimbursement, the State of Louisiana joined with private safety-net hospitals to design a collaborative program substantially similar to the one approved by CMS for Texas, in Texas SPAs TX 05-01 and TX 05-11, to more fully fund the Medicaid program under current law and ensure the availability of quality healthcare services for the low

Bienville Building • 628 North 4th Street • P.O. Box 91030 • Baton Rouge, Louisiana 70821-9030
Phone #: 225/342-3891 or #225/342-4072 • Fax #: 225/342-9508 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

1

income and needy population. Similar to the Texas program, a number of subdivisions of the State also intend to join with private safety-net hospitals to design collaborative programs. The State intends to require compliance by all participants in the collaboratives with the Prospective Conditions of Participation in the Texas Private Hospital Upper Payment Limit Supplemental Reimbursement Program imposed by CMS ("CoPs"), attached for your convenience.

CMS asked several questions regarding the Low Income and Needy Care Collaboration Agreement, and each of these questions is addressed specifically in the enclosed responses to CMS's two March 2010 RAIs. Generally, a Low Income and Needy Care Collaboration Agreement is the agreement between a governmental entity (State or local governmental entity) and a group of non-state and non-public hospitals ("Private Hospitals") to develop a plan for the Private Hospitals to reduce or alleviate the need for the governmental entity to provide care to the low income and needy patients that do not qualify for Medicaid benefits, thereby allowing the governmental entity to utilize its public funds to increase support to the Medicaid program. The Private Hospitals will enter into their own arrangements (contractual or otherwise) with the individuals or entities who provide care directly to low income and needy patients, including individuals or entities that had previously provided low income and needy care services to the governmental entity. The Private Hospitals may consider the amount of supplemental payments they expect to receive in deciding whether, and to what degree, they will provide charity services to the low income and needy patients consistent with the CoPs. As part of this collaboration with the Private Hospitals, the governmental entity may contribute resources to the provision of services to low income and needy individuals by, for example, contributing facility space for the treatment of these patients, operational management services or medical malpractice coverage to ensure that patients receive adequate quality care.

Examples of the types of low income and needy care services the Private Hospitals may provide, that were previously provided or paid for by a governmental entity, include but are not limited to:

- treatment and support to patients with mental illnesses and addictive disorders (e.g. face-to-face crisis screening, in-home crisis stabilization, mental health treatment, outreach, monitoring, case management, crisis management, medication management, service and benefit coordination, addiction counseling, relapse prevention training, skills training, financial management and budgeting, assistance in obtaining and maintaining employment or other meaningful daily activities, assistance in utilizing public transportation and direct assistance with family);
- housing/residential services for patients with serious mental illnesses (including basic board and care, assistance with personal care needs, monitoring of self-medication, and developing and implementing an individual service plan for each patient that may include rental subsidies, assisting with obtaining and maintaining permanent housing,

    increasing tenancy skills and achieving a greater self-determination which results in sustained levels of community living);
- alcohol and drug abuse treatment and rehabilitation services;
- tobacco and other healthcare-related prevention services;
- residency program and healthcare education services;
- primary and specialty physician services;
- emergency and on-call physician services;
- kidney dialysis services;
- dentistry and oral surgery services;
- ophthalmology services;
- optometry services;
- pharmaceutical services;
- radiology services;
- CRNA services;
- radiation oncology services;
- nursing hotline services;
- air ambulance services;
- professional healthcare recruiting services for medical shortage areas;
- health clinic services;
- laboratory services;
- perfusionist services; and
- inpatient and outpatient hospital services.

The provision of the low income and needy services by the Private Hospitals directly to patients will result in the alleviation of the expense of the public funds the governmental entity previously expended on this care. For purposes of evaluating the amount and impact of the Private Hospitals' low income and needy care delivery under the collaborative program, the governmental entity will be limited to retrospective evaluations in accordance with the CoPs. The preceding sentence is not, however, intended to limit the governmental entity's evaluation of providers for issues wholly unrelated to the collaborative, such as provider licensure.

DHH will also adopt rules consistent with federal law that will prohibit any cash or in-kind transfers from the Private Hospitals to the governmental entity that have a direct or indirect relationship to Medicaid payments. The DHH rules will not allow a governmental entity to condition the amount it funds the Medicaid program on a specified or required minimum amount of low income and needy care. The DHH rules will also not allow a governmental entity to assign any of its contractual or statutory obligations to the Private Hospitals receiving payments under SPAs 09-55, or 09-56, and will not allow the governmental entity to recoup funds from a Private Hospital that has not adequately performed under the Low Income and Needy Care Collaboration Agreement. Additionally, the DHH rules will prohibit each Private Hospital from returning any of the supplemental payments it receives under SPAs 09-55, or 09-56 to the governmental entity that provides the non-federal share of the

payments, and prohibit each governmental entity from receiving any portion of the supplemental Medicaid payments made to the Private Hospitals under SPAs 09-55, or 09-56. The State will require each Private Hospital and governmental entity participating in the program under SPAs 09-55, or 09-56 to execute a certification form certifying that it complies with the DHH rules and the CoPs.

Enclosed are answers to the specific questions CMS raised in its two March 2010 RAIs. Please let me know if you have any questions or need any additional information regarding SPAs 09-55, or 09-56.

Sincerely,

Don Gregory
Medicaid Director
Department of Health and Hospitals

Enclosures

# TN 09-55
## Responses to CMS Additional Questions Received 8/26/2010 and 9/20/2010

1. Revised CMS-179 forms are needed for both LA-09-55 and LA-09-56 to reflect the Federal Budget Impact (Block 7).

   **Response:** Please make a pen and ink change on the Form 179 for TN 09-55 to reflect the Federal Budget Impact as follows: FFY 2010 is $137,921,760; and FFY 2011 is $189,144,025.

2. According to the responses to questions 4 and 6 on the RAI, the state intends to fund the state share through legislative appropriations of state general revenue already included in DHH's budget appropriation. The RAI response also states that Louisiana joined with private safety-net hospitals to design a collaborative program substantially similar to the Texas program. The Texas program is funded through intergovernmental transfers of funds per the Texas Prospective Conditions of Participation. So is the Louisiana program funded by appropriations, intergovernmental transfers, or both?

   **Response:** The state share will be funded by state appropriations comprised of state general funds and voluntary IGTs from non-state governmental entities.

3. Please submit a Louisiana Prospective Conditions of Participation.

   **Response:** Attached is the Louisiana Prospective Conditions of Participation

4. Was the UPL correct demonstration submitted for inpatient payments as it is seems to be for outpatient hospitals?

   **Response:** The incorrect UPL demonstration was submitted by mistake. Attached is the correct inpatient UPL demonstration.

5. If IGTs will be used, please provide information about the source of each individual IGT. All IGTs must be voluntary or the State must provide evidence that the amount provided by the localities does not exceed the non-federal share of payment. If an IGT is not voluntary, then the State must demonstrate that funding from political subdivisions is not greater than the percentage that they were providing on 9/30/08 to demonstrate compliance with the maintenance of effort (MOE) requirement in the ARRA. If the IGTs are voluntary, certification from the public entity must be provided.

   **Response:** Hospital Service Districts will be the entities that IGT funds. Currently, the Department is working with West Jefferson regarding potential IGT's, but there are ten other Hospital Service Districts that could agree to voluntarily IGT funds.